# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:19-cr-00095** |
| | ) | **Judge Aleta A. Trauger** |
| | ) | |
| **MICHAEL KESTNER** *et al.* | ) | |

## MEMORANDUM AND ORDER

Before the court are defendant Michael Kestner's Motion to Dismiss Counts Two, Seven, and Twelve of the Superseding Indictment as Time-Barred as to Him (Doc. No. 179) and his Motion to Dismiss Superseding Indictment for Lack of Fair Notice (Doc. No. 180). The United States has filed a consolidated Response to both motions (Doc. No. 186), and the defendant has filed a Reply (Doc. No. 188). For the reasons set forth herein, the Motion to Dismiss Superseding Indictment for Lack of Fair Notice will be denied, but the Motion to Dismiss certain counts as time-barred with be granted.

## I.      PROCEDURAL BACKGROUND

The original Indictment in this case, naming Kestner's co-defendants, was filed on April 10, 2019. (Doc. No. 3.) The Superseding Indictment, adding Kestner as a defendant, was filed on October 9, 2019. (Doc. No. 60.) It charges Kestner and his co-defendants with one count of conspiracy to commit healthcare fraud, in violation of 18 U.S.C. § 1349, and fifteen counts of knowingly and willfully executing and attempting to execute a scheme to defraud Medicare, TennCare, and TriCare, all healthcare benefit programs affecting commerce, in violation of 18 U.S.C. §§ 1347(a) and 2.

In support of these charges, the Superseding Indictment alleges that, at all relevant times, MedManagement, Inc. ("MMI") was a Tennessee management company with its principal place of business in Franklin, Tennessee and that Kestner was the sole owner and CEO of MMI. (Doc. No. 60 ¶ 8.) MMI was the majority owner of Pain MD, a Delaware limited liability company whose principal place of business was in Franklin, Tennessee. Pain MD operated pain and wellness clinics in Middle Tennessee, Virginia, and North Carolina. Kestner indirectly owned Pain MD and served as its President. (*Id.* ¶ 9.) The other defendants, all healthcare providers (three nurse practitioners and one physician's assistant), were employed by MMI or Pain MD. (*Id.* ¶ 10.)

The Superseding Indictment alleges that, beginning no later than January 2010 and continuing through May 29, 2018, the defendants knowingly agreed and conspired with each other and unknown others to commit healthcare fraud for the purpose of enriching themselves. (*Id.* ¶¶ 12–13.) To accomplish this purpose, the defendants represented to Medicare, TennCare, and TriCare that they provided services to patients—specifically Tendon Origin Insertion ("TOI") injections into patients' backs, along the spine—even though these services were not medically necessary (*id.* ¶¶ 14, 15) and often were "not provided as represented" (*id.* ¶ 15), as the injections were "anatomically impossible to perform as recorded in the medical records" (*id.* ¶ 18).

The Superseding Indictment alleges that Pain MD held itself out to be an "interventional" pain management practice, meaning that it claimed to provide pain management services ("including injections and durable medical equipment") that were intended to reduce patient reliance on opioids and other narcotic pain medications, when, in fact, these services were intended to increase Pain MD's revenues and enrich the defendants. (*Id.* ¶ 16.) As a result of the conspiracy, the defendants caused more than $27,537,383 to be billed to Medicare, which resulted in approximately $5,054,525 in reimbursement; more than $8.5 million to be billed to TennCare,

resulting in approximately $101,078 in reimbursement; and more than $2,544,322 to be billed to TriCare, resulting in approximately $284,459 in reimbursement. (*Id.* ¶ 19.)[1]

The portion of the Superseding Indictment entitled "Counts Two through Sixteen," charging "Health Care Fraud," expressly incorporates the allegations supporting the conspiracy charge and then largely repeats the same allegations pertaining to the conspiracy. The Superseding Indictment states that Kestner and his co-defendants "did knowingly and willfully execute, and attempt to execute a scheme and artifice to defraud" the three healthcare programs by submitting claims for reimbursement for TOI injections into patients' backs that were not medically necessary, for the purpose of enriching themselves. (*Id.* ¶¶ 21, 22.) The Superseding Indictment then states:

> On or about the dates enumerated below, in the Middle District of Tennessee, the Defendants, . . . in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce . . . and to obtain, by means of materially false and fraudulent pretenses, . . . money and property owned by, and under the custody and control of, Medicare.

(*Id.* ¶ 24.)

The Superseding Indictment contains a chart inserted at paragraph 24, listing each enumerated Count Two through Sixteen and identifying the defendants charged in each specific count, the affected beneficiary's initials, the date of service, the claim receipt date, the service allegedly performed, the amount billed, and the program billed. (*See id.* at 8.) Kestner is charged

---

[1] In paragraph 15, the Superseding Indictment alleges that the defendants submitted or caused to be submitted false claims in an amount in excess of approximately $3.5 million for services that were medically unnecessary and "not provided as represented." (Doc. No. 60 ¶ 15.) This figure appears to have been inadvertently carried over from the original Indictment (*see* Doc. No. 3 ¶ 17), which charged fewer counts and alleged a less lengthy duration of the conspiracy.

in each of the counts. Thus, for example, the chart contains the following information relating to the three counts that Kestner contends are time-barred:

| Count | Defendant | Beneficiary Name | Alleged Date of Service | Claim Receipt Date | Service Purportedly Performed | Billed Amount |
|-------|-----------|------------------|-------------------------|--------------------|-------------------------------|---------------|
| TWO | **MICHAEL KESTNER**, and **BRIAN RICHEY** | R.D. | 5/7/2014 | 5/19/2014 | Tendon Origin Injection (201551) | $105 (x5) Medicare |
| SEVEN | **MICHAEL KESTNER**, and **DANIEL SEELEY** | P.M. | 9/24/2014 | 9/29/2014 | Tendon Origin Injection (201551) | $105 (x5) Medicare |
| TWELVE | **MICHAEL KESTNER**, and **JONATHAN WHITE** | B.D. | 4/15/2014 | 5/13/2104 | Tendon Origin Injection (201551) | $105 (x5) Medicare |

(*See* Doc. No. 60 ¶ 24, at 8–9.[2]) Aside from the information in the chart, the Superseding Indictment does not contain additional information related to the separate healthcare fraud charges.

## II.     MOTION TO DISMISS ENTIRE INDICTMENT

Kestner moves under Rule 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure for an order dismissing the Superseding Indictment in its entirety. He maintains that the Superseding Indictment is legally insufficient, because it does not consist of a "plain, concise, and definite written statement of the essential facts constituting the offense[s] charged." (Doc. No. 180, at 1 (quoting Fed. R. Crim. P. 7(c)(1), and citing *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992)).)

### A.     Legal Standard

The Notice Clause of the Sixth Amendment, as protected by Rule 7(c) of the Federal Rules

---

[2] The chart is redacted to show only the three identified counts.

of Criminal Procedure, guarantees a criminal defendant the right to be informed of the charges brought against him. *Russell v. United States*, 369 U.S. 749, 761 (1962). "In general, an indictment is constitutionally adequate 'if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense.'" *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 176 (6th Cir. 1992) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974) (other citations omitted)).

> Summarizing the governing Supreme Court cases, the Sixth Circuit has held that
>
> [a]n indictment will usually be sufficient if it states the offense using the words of the statute itself, as long as the statute fully and unambiguously states all the elements of the offense. The Supreme Court has cautioned, however: "Undoubtedly the language of the statute may be used in the general description of the offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged."

*Id.* (quoting *Hamling*, 418 U.S. at 117–18) (other internal citations omitted). Thus, to be legally sufficient, "the indictment must assert facts which in law constitute an offense; and which, if proved, would establish *prima facie* the defendant's commission of that crime." *Id.* at 177 (citing *Fleisher v. United States*, 302 U.S. 218 (1937) (per curiam)).

**B.    The Superseding Indictment Is Legally Sufficient**

In support of his Motion to Dismiss, Kestner argues that the Superseding Indictment is irredeemably confusing and lacks the requisite specificity. He concedes that paragraph 14 makes "a seemingly specific allegation" that the defendants achieved the objective of the purpose of the conspiracy and the scheme to defraud by "representing to Medicare, Medicaid [TennCare], and Tricare that they provided service[s] to patients that 'were not medically necessary—namely TOIs (CPT Code 20551) injected into patients' back[s], along the spine.'" (Doc. No. 180, at 2 (quoting Doc. No. 60 ¶ 14).) Kestner also acknowledges that the Superseding Indictment repeatedly states

that the defendant providers administered TOI injections that were "medically unnecessary" or "not medically necessary." (*Id.*) He argues, however, that the picture is clouded by other allegations that the defendants submitted reimbursement claims that were "false and fraudulent" in unspecified ways and allegations that the TOI injections were "not provided as represented," were "anatomically incorrect," or were "anatomically impossible to perform." (*Id.* (citing Doc. No. 60 ¶¶ 15, 17, 18.) He also takes exception to the vague "suggestion" in the Superseding Indictment that Kestner's co-defendants prescribed medically unnecessary durable medical equipment ("DME"), noting that it is unclear whether the government intends to claim "that Pain MD billed for DME that was not medically necessary." (Doc. No. 180, at 4 (citing Doc. No. 60 ¶¶ 15–18.)

Regarding the latter contention, the United States does not respond at all to the defendant's objection to the vagueness of the allegations concerning the prescribing, or billing for, DME. The court finds that, insofar as the United States intended to charge prescribing or billing for medically unnecessary DME as part of the conspiracy, the Superseding Indictment does not contain a "statement of the facts and circumstances" sufficiently specific as to DME to "inform the accused of the specific offense" involving DME. *Superior Growers Supply*, 982 F.2d at 176. That does not mean, however, that the Superseding Indictment as a whole is fatally deficient. It simply means that the allegations concerning DME are not sufficiently specific to form part of the conspiracy charge.

Regarding the sufficiency of the allegations supporting the charges of conspiracy to commit healthcare fraud, under 18 U.S.C. § 1349, and substantive healthcare fraud in violation of § 1347(a), insofar as the charges are premised on reimbursement claims related to medically unnecessary TOI injections, the court is not persuaded by the defendant's objections. To obtain a

conviction for healthcare fraud under § 1347(a), the United States must prove that the defendant "(1) knowingly devised a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; (2) executed or attempted to execute this scheme or artifice to defraud; and (3) acted with intent to defraud." *United States v. Martinez*, 588 F.3d 301, 314 (6th Cir. 2009) (quoting *United States v. Hunt*, 521 F.3d 636, 645 (6th Cir. 2008)). The elements of a conspiracy charge under § 1348 are simple— that the defendants entered into an agreement to commit healthcare fraud. Moreover, when an indictment charges a conspiracy, "it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy." *United States v. Reynolds*, 762 F.2d 489, 494 (6th Cir. 1985), quoted in *Superior Growers Supply*, 982 F.2d at 176.

The Superseding Indictment tracks the language of the statutory provisions under which the defendants are charged, insofar as it alleges that the defendants, "in connection with the delivery of, and payment for, health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute" a "scheme and artifice to defraud" Medicare, TennCare, and TriCare and that they knowingly conspired and agreed with each other to execute healthcare fraud in violation of § 1347(a). (Doc. No. 1 ¶¶ 24, 12.) In addition to tracking the language of the relevant statutes, the Superseding Indictment contains specific factual allegations as to how, when, and by whom each separate scheme was executed and the healthcare benefit program against which the fraud was perpetrated. (*Id.* ¶ 24.) That is, the Superseding Indictment clearly alleges that the defendants conspired to provide services and did in fact provide services—namely, TOI injections—that were not medically necessary and, in addition, in some instances, could not actually have been provided in the manner reported in the patients' medical records. There is no

ambiguity here. As indicated above, the chart provided in paragraph 24 of the Superseding Indictment specifically identifies the defendants named with respect to each individual charge, the initials of the beneficiary who allegedly received medically unnecessary services, the date of the service, the date the claim for reimbursement was submitted, the service purportedly performed (in each case, TOI injections), and the amount billed for each service. (Doc. No. 60 ¶ 24, at 8.)

Kestner's objection on the basis that the Superseding Indictment references anatomical impossibility as well as the lack of medical necessity is a red herring: these allegations are not mutually exclusive. Each of the TOI injections referenced in the Superseding Indictment is alleged to have been medically unnecessary; whether they may not have actually been performed or were not performed as indicated on the patients' medical charts is simply decoration on the icing on the cake. The Superseding Indictment clearly charges the defendants with engaging in healthcare fraud and conspiring to engage in healthcare fraud by providing—and submitting reimbursement claims for—medically unnecessary TOI injections.

In sum, insofar as the charges are premised upon the prescribing and billing for medically unnecessary TOI injections, the Superseding Indictment "(1) contains the elements of the charged offense[s], (2) gives the defendant[s] adequate notice of the charges, and (3) protects the defendant[s] against double jeopardy." *Valentine v. Konteh*, 395 F.3d 626, 631 (6th Cir. 2005). As such, it is legally sufficient, and Kestner's motion to dismiss the Superseding Indictment in its entirety as irredeemably ambiguous will be denied. However, because the allegations with regard to DME are fatally deficient, the government may not introduce evidence of such at trial.

## III.    MOTION TO DISMISS COUNTS TWO, SEVEN, AND TWELVE

Citing Rule 12(b)(1) of the Federal Rules of Criminal Procedure and Local Criminal Rule 12.01(b), Kestner asserts that Counts Two, Seven, and Twelve all charge substantive offenses under 18 U.S.C. § 1347(a) and that indictments under that provision are subject to the general five-

year statute of limitations found in in 18 U.S.C. § 3282(a). He points out that the alleged dates of service and the claim receipt dates for Counts Two, Seven, and Twelve all fall more than five years before Kestner was indicted on October 9, 2019 and argues, on that basis, that these three counts are time-barred.

In response, the United States concedes that indictments under § 1347 are subject to a five-year statute of limitations, but it argues that healthcare fraud under 18 U.S.C. § 1347 is a continuing offense that "may be properly charged as a single scheme in a single count." (Doc. No. 186, at 2 (citing *United States v. Holden*, 806 F.3d 1227, 1232 (9th Cir. 2015)). It contends that Counts Two through Sixteen of the Superseding Indictment properly "charg[e] violations of 18 U.S.C. § 1347" as "part of an ongoing scheme or artifice to defraud" and that, even though the "fraudulent claims made by the defendants in furtherance of the scheme or artifice are charged as separate counts, the language of the Superseding Indictment makes clear that each of these counts is in fact an act taken by the defendants in execution of the ongoing scheme or artifice." (Doc. No. 186, at 2–3.) The United States argues that, because Count One charges an ongoing conspiracy from January 1, 2010 through May 29, 2018, and Counts Two, Seven, and Twelve are part of an ongoing scheme to defraud, they are not time-barred.

Alternatively, the United States argues that, even if Counts Two and Twelve are deemed to be time-barred, Count Seven should not be dismissed, because it "involves a claim that, as shown in the claims data that was provided to defense in discovery, was not paid until October 29, 2014," within the limitations period, as a result of which the claim is not time-barred. (*Id.* at 3.) In his Reply, Kestner argues that (1) *Holden* does not save the claims from being time-barred; and (2) a healthcare fraud scheme is executed upon the submission of a false claim, such that its later payment by the government cannot bring it within the scope of the limitations period.

As for the first argument, the court agrees with Kestner that the government cannot both have its cake and eat it too. The government must either allege—and charge—one overarching scheme, or it may allege and charge separately numerous executions of a scheme, each of which must fall within the limitations period. *Holden*, upon which the government relies, makes this distinction clear. In that case, the defendant appealed his conviction on thirty-two separate counts of healthcare fraud under 18 U.S.C. § 1347. Specifically at issue on appeal was whether the charge alleged in "revised Count 41" was barred by the five-year statute of limitations at 18 U.S.C. § 3282. *Holden*, 806 F.3d at 1229. "Revised Count 41" came about because the defendant had previously moved to dismiss Counts 41 through 56 of the indictment as time-barred, because these counts alleged the submission of false or fraudulent bills stemming from a single nursing home visit that took place on January 6, 2006, outside the limitations period. *Id.* The district court granted the motion and dismissed Counts 41 through 56 without prejudice. The government filed a superseding indictment, charging the dismissed counts in a single consolidated Count 41, which read:

> That on or about the date of service of January 6, 2006 and continuing through the date of the last payment of claims submitted for that date of service on February 27, 2007, . . . [the defendant] knowingly and willfully executed and attempted to execute the above-described scheme and artifice to obtain . . . money owned by and under the custody of Medicare . . . by submitting or causing to be submitted claims for payment from Medicare which falsely represented [that a service was provided] when, in fact, . . . the service [was not] provided, all in violation of 18 U.S.C. § 1347(2).

*Id.* at 1230.

The defendant challenged the consolidated charge as time-barred. In rejecting that challenge, the Ninth Circuit noted, first, that healthcare fraud in violation of § 1347 may be a "continuing offense," *id.* at 1232, if it "involves (1) an ongoing course of conduct that causes (2) a harm that lasts as long as that course of conduct persists." *Id.* at 1231 (quoting *United States v.*

*Morales*, 11 F.3d 915, 921 (9th Cir. 1993). A crime that constitutes a continuing offense, "[u]nlike most crimes," is "complete" for statute of limitations purposes "only after this ongoing course of conduct is complete." *Id.* (citing *Toussie v. United States*, 397 U.S. 112, 115 (1970)). A continuing offense punishes each completed "execution of a fraudulent scheme rather than each act in furtherance of such a scheme . . . ." *Id.* (quoting *United States v. Molinaro*, 11 F.3d 853, 859 (9th Cir. 1993)).

That conclusion standing alone, however, did not resolve the statute of limitations issue. As the court explained:

> Though the government may be allowed to allege that many fraudulent acts make up a single scheme, it does not necessarily follow that the government may combine those acts into a single charge when some acts fall outside the statute of limitations. Thus, the district court was only justified in permitting revised Count 41 if the multiple acts completed in relation to the 2006 nursing home visit could be charged together as a single scheme to avoid statute of limitation problems.

*Id.* at 1232. It further held that, even when the government has the option of charging a defendant's fraudulently submitted claims as multiple counts, it is not necessarily precluded from charging all of them as a continuing offense in a single count. *Id.* That is, analogizing to bank fraud, on which the healthcare fraud statute was modeled, the court held that, "[s]o long as the 'indictment was written so as to allege only one execution of an ongoing scheme,' . . . the government may charge a single health care fraud scheme in violation of 18 U.S.C. § 1347 even when several acts in furtherance of the scheme fall outside the statute of limitations." *Id.* (quoting *United States v. King*, 200 F.3d 1207, 1213 (9th Cir. 1999)).

Applying this holding to the facts before it, the court found that, in the superseding indictment, "the government was careful to allege only one execution of an ongoing scheme in relation to the services performed at the nursing home" on a single date in 2006 and that, although some of the acts in furtherance of the alleged scheme fell outside the statute of limitations, "the

scheme, as charged in revised Count 41, was within the five-year period under 18 U.S.C. § 3282(a)." *Id.* The court further found, however, that, while the parties disputed what act—whether the submission of a claim or the receipt of payment for a fraudulent claim—denotes the final "execution" of a scheme in violation of § 1347, the court did not need to decide the issue. Although the superseding indictment alleged that the scheme continued "through the date of the last payment of claims," the defendant submitted the "final fraudulent claim" in connection with the scheme just two days earlier, and both dates fell less than five years before the original indictment was returned. *Holden*, 806 F.3d at 1232. The court, therefore, found that the scheme charged in revised Count 41 was not time-barred.

*Holden* does not help the government here, because the government chose in this case to charge the defendants' fraudulently submitted claims as multiple counts, rather than as a single count.[3] That is, as charged in the Superseding Indictment, each submission of a fraudulent claim constitutes a separate execution of a scheme to defraud. And, as alleged in the Superseding Indictment, the only alleged dates relevant to each scheme are the dates of the purported service and the date on which the government received the fraudulent claim for the allegedly medically unnecessary service. These dates for Counts Two, Seven, and Twelve all occurred more than five years before the date on which the Superseding Indictment, charging Kestner for the first time, was returned. As a result, these Counts, as charged, are time-barred as to Kestner.

The government argues that Count Seven, at least, is not time-barred, because the defendants received payment on that claim within the limitations period. (*See* Doc. No. 186, at 3 ("Count Seven involves a claim that, as shown in the claims data that was provided to defense in

---

[3] This is not to imply that, in this particular case, the government could have charged all fifteen counts of healthcare fraud as a single continuing scheme to defraud the government, an issue upon which the parties offer no actual argument and the court expresses no opinion.

discovery, was not paid until October 29, 2014.").) The problem with this argument is that the date of receipt of payment is not alleged in the Superseding Indictment, and the United States has not presented the claims data to which it refers or requested an evidentiary hearing. Nor has it filed a Bill of Particulars. Generally, when considering a motion to dismiss an indictment (or parts thereof), "the [c]ourt must view the [i]ndictment's factual allegations as true, and must determine only whether the indictment is valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Edwards*, 291 F. Supp. 3d 828, 831 (S.D. Ohio 2017). While a court ruling on a Rule 12 motion may make preliminary factual findings necessary to decide questions of law raised in the motion (as long as the court's conclusions "do not invade the province of the jury," *United States v. Craft*, 105 F.3d 1123, 1126 (6th Cir. 1997)), the court has not been called upon to make any such preliminary factual findings in this case. On its face, the Superseding Indictment alleges facts that indicate that Count Seven, too, is time-barred.

The court, however, is not fully persuaded by the defendant's argument that, even if the court takes the payment date into consideration, the charge would still be time-barred, because the execution of the scheme to defraud alleged in Count Seven was completed upon the submission of the fraudulent claim for payment, making the date on which the defendants actually received payment irrelevant. Kestner cites *United States v. Chavez*, 951 F.3d 349, 347 (6th Cir.), *cert. denied*, 141 S. Ct. 386 (2020), for the proposition that the crime of engaging in a scheme to commit healthcare fraud is "completed" "the moment the conspirators submitted false claims for payment." (Doc. No. 188, at 3.) That, however, is not what *Chavez* held.

Rather, in the context of addressing the defendant's challenge to the validity of his conviction for money laundering based on the timing of the actions that gave rise to the charge, the court rejected the defendant's contention that the crime of healthcare fraud was not

"committed" until the fraudulent claims were paid and deposited into the defendant's account. In doing so, the court expressly distinguished between "committing" and "completing" a crime that constitutes a continuing offense:

> By definition, money laundering involves the "proceeds" of illegal activity. 18 U.S.C. § 1956(a)(1). That implies that you can't commit money laundering unless some other crime has *already* been committed (though not necessarily *completed* since it could be a continuing offense). Chavez says that depositing United Healthcare checks in the bank accounts was a necessary step in the healthcare fraud. Thus, he reasons, those funds were not "proceeds" and the deposits couldn't constitute money laundering. The conclusion follows from the premise. But the premise is wrong.

> That's because the law Chavez was convicted under [18 U.S.C. § 1347] prohibit[s] the scheme to defraud, rather than the completed fraud. Thus, the crime was committed the moment the conspirators submitted false claims for payment. Under a "scheme to defraud" statute, liability doesn't wait to attach until *after* the victim falls for the ruse and cuts a check. Much less until after the fraudster *deposits* that check.

*Chavez*, 951 F.3d at 357 (internal quotation marks and citations omitted) (emphasis in original). In other words, *Chavez* recognized that a continuing offense, such as a healthcare fraud scheme, may be *committed* before it is *completed* and that, in that particular case, the crime was committed upon the submission of false claims, even if it was not necessarily completed by then. Moreover, in embracing the distinction between "commission" and "completion," *Chavez* strongly suggests that a defendant's receiving and depositing a payment received as a result of the submission of the false claim may be deemed to "complete" the offense, thus extending the duration of the offense for purposes of the statute of limitations.

In any event, this is an unresolved area of the law. Even though the United States did not choose to address the issue, the court finds that Count Seven of the Superseding Indictment should be dismissed without prejudice.

## IV.     CONCLUSION AND ORDER

For the reasons set forth herein, defendant Michael Kestner's Motion to Dismiss Superseding Indictment for Lack of Fair Notice (Doc. No. 180) is **DENIED**, but the United States will be barred from introducing evidence at trial of false claims relating to medically unnecessary DME.

Kestner's Motion to Dismiss Counts Two, Seven, and Twelve of the Superseding Indictment as Time-Barred as to Him (Doc. No. 179) is **GRANTED**. Counts Two and Twelve are **DISMISSED WITH PREJUDICE**, and Count Seven is **DISMISSED WITHOUT PREJUDICE**.

It is so **ORDERED**.

_____
ALETA A. TRAUGER
United States District Judge